UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BENJAMIN F. WRIGHT                    CIVIL ACTION NO. 12-cv-2813

VERSUS                                JUDGE HICKS

NATHAN CAIN                           MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Benjamin Wright ("Petitioner") was convicted by a Webster Parish jury of 23 counts of possession of child pornography. He received sentences that totaled 20 years. His conviction was affirmed on direct appeal. State v. Wright, 57 So.3d 465 (La. App. 2d Cir. 2011), writ denied, 68 So.3d 520 (La.). Petitioner also pursued a post-conviction application in the state courts. He now seeks federal habeas corpus relief on the grounds of (1) insufficient evidence, (2) denial of change of venue, and (3) denial of the right to self representation. For the reasons that follow, it is recommended the petition be granted.

**Background Facts**

Petitioner was arrested on a warrant for public intimidation of a child protection investigator. An inventory search of his car revealed 17 video tapes in the trunk, some of which were labeled as pornographic. A search warrant was obtained for the videos, and law enforcement determined that some of the recordings were female customers changing clothes in the dressing room of Petitioner's clothing store. Some contained footage of women and

in the dressing young girls in various stages of undress.

Police obtained a second search warrant for Petitioner's business to look for evidence of electronic devices that were used for recording the customers in the dressing rooms or restrooms, and any equipment used for editing or viewing such images. A search of a computer at the business revealed audio/video files of young girls involved in child pornographic acts. CDs and 3 ½ inch disks found near the computer and in a private office area of the store were seized. Police also found in Petitioner's private office a piece of paper with a list of websites that were devoted to child pornography. A search of the dressing rooms revealed that cameras had been there, but they had been removed.

Officers obtained another search warrant for a forensic search of the computer and electronic storage devices. They discovered multiple images of child pornography. Petitioner was charged with possession of 24 of the images found on two of the 3 ½ inch disks.

**Sufficiency of the Evidence**

Petitioner's 24 convictions were returned pursuant to La. R.S. 14:81.1(A), which defined pornography involving juveniles as including the intentional possession of any photographs, films, videotapes, or other visual reproductions of any sexual performance involving a child under the age of 17. Petitioner argues that the State failed to prove that he had awareness of the criminal contents of the computer disk at issue because there was no evidence the disk was ever viewed on any of his computers.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

The state appellate court discussed the Jackson standard and reviewed the relevant evidence in detail. It noted, contrary to Petitioner's assertion that specific intent is required, that the crime "is a general intent crime." State v. Wright, 57 So.3d at 470. General criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the criminal consequences as reasonably certain to result from his act. La. R.S. 14:10(2). The element of "intentional possession" means that the individual knowingly and voluntarily possessed the pornography, in contrast to circumstances in which a person downloaded images without realizing that some images included were child pornography. State v. Wright, 57 So.3d at 470.

Dr. Ann Springer, an expert in pediatric and child abuse medicine, testified that the 24 photographs depicted children under the age of 17, a point which Petitioner does not contest. Matthew Wright testified that placing the images on the disks reflected a wilful act by someone to save the images, as they would have had to place the disk in the drive of the computer and select photographs on the computer to save to the disk. Wright said the images could not have appeared accidentally 24 times on two different disks. To connect Petitioner

to the disks, the State presented testimony that some of the disks also contained Petitioner's business records. There was also the list of child pornography websites that was found in Petitioner's office, which is evidence of his knowledge and intent. The state court found that the evidence, taken as a whole, was sufficient to allow a rational juror to find that Petitioner did not accidentally download the images twice to a disk or otherwise innocently possess them. Rather, he intentionally possessed the photographs.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

Petitioner incorrectly argues that he was charged with a specific intent crime. He also argues that the State could not prove his awareness of the criminal content of the disks. The State did not have to prove by direct evidence exactly how and when Petitioner viewed the images. It was sufficient that there was evidence that, in the ordinary course of human

experience, Petitioner must have been reasonably certain to know that he intentionally possessed child pornography.

Petitioner argues that the State's witness admitted he could not tell who might have saved the images, and that is correct, but the location of the computer in Petitioner's business and its inclusion of his business records, plus the list of websites, was strong evidence that Petitioner was the person who saved the images. There was no competing line of evidence that suggested any other person was responsible.

Detectives testified that they saw pornographic pictures on the monitor of Petitioner's computer during the search, but Petitioner contends photographs of the scene depict the monitor as having a blank screen. Petitioner complains that detectives thus gave perjured testimony. This overlooks the fact that a photograph can capture only one moment of a search. It also questions the credibility of the witnesses, which is squarely within the province of the jury. "[U]nder Jackson, the assessment of the credibility of the witnesses is generally beyond the scope of review." Schlup v. Delo, 115 S.Ct. 851, 868 (1995). "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." Id. Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005). The jury made a rational and reasonable assessment of the evidence, and the state courts issued a considered and reasonable opinion that applied Jackson to the verdict. Considering the doubly deferential standard that applies in habeas review, Petitioner is not entitled to habeas relief on this

claim.[1]

**Change of Venue**

One of Petitioner's original attorneys filed a motion for change of venue that cited publicity in local news media. He attached five articles from local sources. The articles noted that Petitioner had been accused of videotaping customers, that tapes were seized from his car, and other general information about the case. Petitioner's trial attorney filed a second motion for change of venue just as the trial began. She cited continued coverage and attached a front page article from an August 2006 local newspaper that had an article about the trial being set to begin the following Monday. The trial was actually continued and did not begin until three months later, in November 2006. Judge Ford Stinson deferred ruling on the venue issue because he believed the best procedure would be to "go ahead and go through the jury selection so we could see for ourselves what knowledge, if any, that jurors have or had about this case."

"The Sixth Amendment secures to criminal defendants the right to a trial by an impartial jury." Skilling v. U.S., 130 S.Ct. 2896, 2912-13 (2010). Pretrial publicity may influence a jury pool and warrant a change of venue in two contexts. The first is in cases such as Rideau v. Louisiana, 83 S.Ct. 1417 (1963) where a local television station repeatedly

---

[1] The sufficiency of the evidence should be addressed even if the court decides that one of the other issues presented by Petitioner entitles him to a new trial. That is because if the evidence was insufficient to support the conviction, double jeopardy principles would prohibit a new trial. Greene v. Massey, 98 S.Ct. 2151 (1978); Patterson v. Haskins, 470 F.3d 645 (6th Cir. 2006); and U.S. v. Rodriguez, 260 F.3d 416 (5th Cir. 2001).

broadcast a police interrogation of the suspect that was done without counsel and produced a confession. Another example is Sheppard v. Maxwell, 86 S.Ct. 1507 (1966) in which news reporters extensively covered the story of Sam Sheppard, jurors became celebrities, newsmen practically took over the courtroom, and a "carnival atmosphere" pervaded the trial. This is obviously not a case where there was such publicity as to presume prejudice. There was a reasonable amount of coverage for a non-violent crime, the stories merely outlined the accusations, and they did not contain any confession or blatantly prejudicial information that potential jurors could not reasonably be expected to put out of mind. Just as the Court in Skilling concluded that the infamous Enron executive's trial was not one in which prejudice was presumed, there is no such presumption in this case.

The next consideration is whether actual prejudice infected the jury. There is no "hard-and-fast formula" that dictates the necessary depth or breadth of voir dire, and the process is particularly within the province of the trial judge. Skilling, 130 S.Ct. at 2917. When pretrial publicity is an issue, primary reliance on the judgment of the trial judge makes especially good sense because he sits in the locale where the publicity is said to have had its effect. Id. at 2918.

At the conclusion of the five-hour jury selection process, Judge Stinson noted that 33 jurors had been questioned, and he counted 13 (39%) who had heard nothing about the case. The other 20 jurors said they had heard something about it. The judge acknowledged that there had been media coverage of the case, but only one juror indicated that she had formed an opinion about the case. Judge Stinson said that he granted a defense challenge for cause

to that juror. He also granted two other defense challenges for cause and did not deny any defense challenges. He said that "for the most part, the ones that had heard something about the case indicated that they had very little recollection." They "couldn't really talk about specifics of the case or what they had read or what they had heard, and they were not challenged for cause ... ." He added that there was no indication that the State had released information or generated any kind of hostility towards Petitioner. There had also been a significant period of time between jurors hearing about the case in news reports and the trial. Based on all of these factors, and other reasons given by the judge, the request to change venue was denied.

Petitioner raised the venue issue on direct appeal. The appellate court reviewed the applicable law and facts in detail. It went through the voir dire process panel by panel, discussed the answers of each juror who had heard about the case, and noted whether the jurors were seated or removed for cause or based on a peremptory challenge. It also reviewed the trial judge's reasons. The appellate court, after a thorough review of the record, found no error in the trial judge's ruling. State v. Wright, 57 So.3d at 472-75.

This court must review the state court's decision under the deferential standard of Section 2254(d). There is no basis for finding that the state court decision was contrary to, or involved an unreasonable application of, clearly-established federal law as determined by the Supreme Court. Relief is also available under the statute if the state court adjudication was based on an unreasonable determination of the facts in light of the evidence presented in the state court. In making that assessment, it must be kept in mind that determinations of

demeanor and credibility of the venire are peculiarly within the trial judge's province. Uttecht v. Brown, 127 S.Ct. 2218, 2224 (2007). Both the trial judge and the state appellate court in this case carefully reviewed the jury selection process within an eye toward whether any juror was improperly influenced by pretrial publicity. All challenges for cause made by Petitioner were granted, Petitioner was able to use several peremptory challenges, and there is no indication that the resulting jury was biased or impaired due to the publicity. The state court's adjudication of this claim survives review under the deferential habeas standard.

**Self Representation**

The Sixth Amendment grants a criminal defendant the right to self-representation in proceedings against him. Faretta v. California, 95 S.Ct. 2525 (1975). The defendant in Faretta "clearly and unequivocally" declared to the trial judge "he wanted to represent himself and did not want counsel." Id. at 2541. If the right is invoked, the trial court must make the defendant aware of the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and makes his choice with his eyes open. Iowa v. Tovar, 124 S.Ct. 1379 (2004); U.S. v. Herrod, 595 Fed. Appx. 402, 407 (5th Cir. 2015); Gross v. Cooper, 312 Fed. Appx. 671 (5th Cir. 2009).

The determination of whether a defendant has expressly and unequivocally invoked the right, requiring Faretta safeguards, is dependent on the particular facts and circumstances of the case. A federal court's review of the state court's decision thus asks whether the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Randolph v. Cain, 412 Fed. Appx. 654, 657

(5th Cir. 2010), citing 28 U.S. § 2254(d)(2) and U. S. v. Long, 597 F.3d 720, 723-24 (5th Cir. 2010) (analyzing various verbal exchanges between defendants and judges in various cases to determine if the right was invoked) and U.S. v. Cano, 519 F.3d 512, 516 (5th Cir. 2008).

A general expression of dissatisfaction with an attorney should not be construed as an invocation of the Faretta right to represent oneself, and a request for self-representation may be rejected if it is intended to cause delay or gain some tactical advantage., U.S. v. Conlan, 786 F.3d 380, 391 (5th Cir. 2015). But if the right is unequivocally and timely invoked, its denial "constitutes a structural error that is not subject to harmless error review and instead requires automatic reversal." Bachelor v. Cain, 682 F.3d 400, 405 (5th Cir. 2012), citing McKaskle v. Wiggins, 104 S.Ct. 944 (1984).

Petitioner had at least four separate criminal cases pending against him at the same time, and he had various appointed counsel throughout the course of those proceedings. He was eventually represented at trial on these charges by attorney Lori Graham, and Petitioner gave no indication at the trial itself that he wished to represent himself. He had an appointed attorney on his direct appeal, but he also filed a pro se brief.

Petitioner's first pro se assignment of error on appeal argued that the trial court denied pro se motions to represent himself on October 25, 2004, September 30, 2005, and July 26, 2006. The state appellate court rejected the claim with the observation: "The record does not reveal that defendant ever made a clear and unequivocal request to the trial court, either personally or through his trial counsel, to represent himself." The court added that the record did not contain any written motion to that effect or a ruling from the trial judge on such a

request. The minute entries on the docket also had no indication that Petitioner wished to represent himself. The appellate court found no evidence in the record that indicated Petitioner attempted to exercise his right to self-representation, so the claim was denied. State v. Wright, 57 So.3d at 475-76.

Petitioner later filed a post-conviction application and raised the identical argument. He stated that he had attempted for years to get transcripts of the three dates he cited, but his requests had been refused, leading to the loss on appeal due to lack of evidence. Petitioner stated that he now had obtained the transcripts, with the help from some friends, and he reasserted his arguments.

The first transcript is from a hearing on a motion to withdraw counsel on October 25, 2004. Attorney Calvin Shirey stated that he told Petitioner of his intent to move for a continuance of the trial date. Shirey said Petitioner threatened him that he better not show up for court the next week if he applied for the continuance. Shirey said he later received a written communication from Petitioner that repeated what Shirey considered to be a threat. Judge Stinson granted Shirey's motion to withdraw and appointed attorney Bobby Stromile. The State had said it was prepared to proceed with trial, but the judge said that trial could not begin that day in light of the appointment of new counsel. Petitioner interjected, "I'm ready for trial, your Honor. I'll - - " The court told Petitioner to be quiet and explained to him that it was his actions that had caused the postponement of the trial. Petitioner later repeated, "I'm ready for trial, your Honor" and complained about the many counts against him, his high bond, and what he perceived as violations of his rights. Petitioner demanded a speedy

trial, denied threatening anyone, and continued to the point where the judge, who has a reputation for patience and tolerance, asked the sheriff to remove Petitioner from the courtroom.  As Petitioner was removed, he complained that this was a "joke" and a "bunch of bull," and "Y'all coming down now."  Petitioner did not, at this hearing, clearly and unequivocally request to represent himself.

The next cited hearing, on September 30, 2005, was in case number 69,945.  That was a different proceeding from this case, which was case number 69,946.  The discussion at that hearing regarded Petitioner being allowed to prosecute an appeal in forma pauperis.  There was also discussion about a motion to withdraw filed by attorney Bobby Culpepper.  During the discussion, the court asked Petitioner if he had anything to say about his attorney withdrawing.  Petitioner said, **"No, sir.  I'm going to defend my own self in any other cases though."**  The judge then stated that he was "going to be very specific" and allowed Culpepper to withdraw from any further trial court matters in number 69,945, if there were any.  The court stated that the Indigent Defender's Office was appointed to represent Petitioner in other cases including number 69,946 (this case).  The judge added, **"As far as your request to represent yourself, we'll just simply deal with that at a later date."**

The final cited hearing was on June 26, 2006.  It was to address a motion to quash filed relevant to this and other criminal matters.  Petitioner moved to dismiss the charges based on alleged violations of his speedy trial rights under state law.  He said that he had "forbid all my lawyers from postponing any cases," so argued that continuances requested by his attorneys should not count in determining the deadline to bring his cases to trial.

Petitioner said that when attorney Culpepper stepped down earlier, **"I told you at that time I did not need no lawyer, I was going to defend myself on the rest of the charges."** Petitioner argued that it had been more than two years, "so I feel that the State needs to either throw these charges out or give me my day in court today." The court explained that one trial had been held, the Indigent Defender Board had been appointed to represent Petitioner on the remaining claims, and the court intended for Petitioner to have his day in court on these charges soon, but the motion to quash on speedy trial grounds was denied.

At the same hearing, an attorney with the Indigent Defender Board explained that he had a conflict because the Board represented children in a juvenile case in which Petitioner was accused of wrongdoing. The court then appointed attorney Lori Graham, who ultimately represented Petitioner at trial. The court encouraged Petitioner to cooperate with Ms. Graham, and trial was set for August 7 (less than two months away). The following discussion then took place:

> MR. WRIGHT:
>
> Your Honor, I'm sure you under - - you remember back on September 30th of last year, **I stated that I did not want no lawyer** on September 30th of last year and Bobby Culpepper was standing right here in this courthouse when **I said I did not want a lawyer.** So all these continuances - -
>
> THE COURT:
>
> **I know you don't, but I'm not going to let you represent yourself, sir. I'm not going to let you do that.**

MR. WRIGHT:

Well, you're penalizing me and giving me, saying I'm getting a continuance because these lawyers want to step down and all you're doing is keeping me on charges that aren't even - - they're charges that ain't even giving me my day in court and you're giving me an IDB lawyer that I don't want and then he steps down after four or five months and you're saying I get penalized for continuance. It's not my fault he steps down, it's his fault he steps down.

THE COURT:

Well, Mr. Wright, I you'll never –

MR. WRIGHT:

It's the State's fault he steps down.

THE COURT:

All right. Well, when you – All right, you're finished now --

MR. WRIGHT:

Yes, sir.

THE COURT:

- - I don't want you to speak again. Now I'm going to say. I know you will go to your grave thinking I'm trying to do what's not good for you, but I disagree, sir. **You need to be represented by a lawyer. I'm not going to let you represent yourself.** I think that that would be the worst thing that could happen to you. And I'm doing that, believe it or not, for your protection. And, like I said, you'll go to your grave I'm sure thinking that that's not correct, but **I'm not going to let you represent yourself. I'm not going to let you do that.** So we're going to have your sentencing if we can get a hold of Mr. Culpepper on Friday to take care of that. Your cases are fixed for trial on August 7th. Your remaining cases. And Ms. Lori Graham is your lawyer. Now that's all we can do today, sir. Your objection to my rulings today are on the record.

    MR. WRIGHT:

    Yes, sir.

    THE COURT:

    Thank you, sir.

That concluded the hearing. Petitioner did not raise the self-representation issue when trial began several months later, but he did raise a number of other objections that were communicated to the court through counsel. Petitioner did raise the issue again at a hearing on his motion for post-judgment verdict of acquittal. He reminded the judge that the court had twice denied his request to proceed pro se at trial.

    Petitioner's post-conviction application was also handled by Judge Stinson. The judge first noted that the identical Faretta issue had been raised on direct appeal, and La. C. Cr. P. art. 930.4 provides that "[u]nless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered." The State has not asserted a procedural bar defense based on this part of the ruling, and the court elects not to do so *sua sponte* given the new evidence that developed after the appeal.[2]

---

[2] A state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a defendant's claim. Harris v. Reed, 109 S.Ct. 1038, n. 10 (1989); Fisher v. State of Texas, 169 F.3d 295, 300 (5th Cir. 1999). But procedural default is normally a defense that the State is obligated to raise and preserve. Trest v. Cain, 118 S.Ct. 478 (1997).

Judge Stinson took note of Petitioner's new transcripts, so he also addressed the claim on the merits. As for the October 25, 2004 hearing, he noted that Petitioner had merely stated that he was ready for trial. He discounted the September 30, 2005 transcript because it "solely involved docket number 69,945" and at "no point during the hearing" was this case addressed. He noted that he had specifically advised Petitioner at that hearing that his request to self-represent would have to be asserted at a later date.[3]

As for the June 26, 2006 hearing, the court stated that the transcript showed "that Petitioner was explaining the reasons behind several continuances that had been granted," but "[a]t no time did Petitioner file a written motion to represent himself nor did he orally raise a motion to represent himself." The court found that "at no point did Petitioner knowingly and unequivocally assert his right to self representation." The state appellate court issued a one-paragraph opinion that summarized the claim and found "no error in the trial court's ruling." The Supreme Court of Louisiana denied writs without comment.

The undersigned must disagree with the state court as to whether Petitioner knowingly and unequivocally asserted his right to self-representation. It is true that Petitioner did not file a written motion or formally characterize his oral remarks as a motion, but <u>Faretta</u> does not require that degree of technical formality. It is required only that the defendant may make a clear and unequivocal invocation of his Sixth Amendment right to represent himself.

---

[3] Petitioner had said at that hearing (in another case), "No, sir. I'm going to defend my own self in any other cases though." The judge had later said, . "As far as your request to represent yourself, we'll just simply deal with that at a later date."

Petitioner said on September 30, 2005, in a different but related case, "I'm going to defend my own self in any other cases though." The judge acknowledged the "request to represent yourself," but said it would be dealt with at a later date. Petitioner raised the issue again at a later date, the June 26, 2006 hearing where he reminded the court that he had "stated that I did not want no lawyer." The judge acknowledged, "I know you don't, but I'm not going to let you represent yourself, sir. I'm not going to let you do that." The judge later advised Petitioner that he needed to be represented by a lawyer and repeated, "I'm not going to let you represent yourself."

The state court's post-conviction decision that Petitioner did not invoke his right to self-representation was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The record shows that Petitioner did clearly and unequivocally invoke his Sixth Amendment right to represent himself on more than one occasion, and he did not merely mention his request as part of a discussion of past continuances. The trial judge made clear that he understood Petitioner was asking to represent himself in this case, but he denied the request. The judge stated that he was requiring counsel for Petitioner's protection and in Petitioner's best interests, but Faretta allows a defendant, foolishly or not, to insist on representing himself.

Once Petitioner made his request clear, and its clarity is evident by the court's acknowledgment of it, it was incumbent on the court to engage Petitioner in a colloquy to advise him of the dangers and disadvantages of self-representation so that the record would reflect that Petitioner knew what he was doing and his choice was made with eyes open. An

example and discussion of the necessary warnings can be found in U. S. v. Jones, 421 F.3d 359, 363-64 (5th Cir. 2005). That procedure was not followed, and the denial of the Faretta right is not subject to harmless error review. Unfortunately, and despite the hard work of the court, counsel, and jurors, the violation of Petitioner's right to self-representation requires habeas relief.

**The Remedy**

A federal habeas judge who determines that relief is warranted ordinarily does not order the immediate release of a prisoner. The typical habeas relief is to grant a conditional release order which provides for release of the petitioner after a reasonable time unless the State either retries the petitioner or otherwise corrects the constitutional violation. The practice was described in Smith v. Lucas, 9 F.3d 359, 366-67 (5th Cir. 1993) and is demonstrated in Gross, 312 Fed. Appx. at 676, which granted habeas relief for a Faretta violation by ordering the State to either give the defendant a new trial or release him from custody within 180 days of the date of the district court's order. That appears to be an appropriate remedy in this case as well.[4]

Accordingly,

---

[4] Some courts have held that at a retrial of a case of this nature the petitioner is not required to represent himself. Rather, the State is obligated at the retrial to afford the defendant all of his constitutional rights, including the right to have the assistance of counsel and the right to represent himself. Johnstone v. Kelly, 812 F.2d 821, 822 (2d Cir. 1987); U.S. v. McKinley, 58 F.3d 1475, 1483 (10th Cir. 1995).

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be conditionally granted by ordering that Petitioner be released from any sentence based on the convictions obtained at the trial in this case unless the State affords Petitioner a new trial within 180 days of the finality of this court's judgment.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 20th day of January, 2016.

Mark L. Hornsby
U.S. Magistrate Judge